UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
GLORIA MOULTRIE,　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Plaintiff,　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　-against-　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:　**MEMORANDUM AND ORDER**
VIP HEALTH CARE SERVICES,　　　　　　　　:　08-CV-0457 (DLI)(RML)
STATIONARY ENGINEERS LOCAL 670　　　　　:
AFL-CIO, DALLAS LUCAS, PRESIDENT　　　　:
STATIONARY ENGINEERS LOCAL 670, AND　　:
CINDY ROSEN, MANAGER VIP HEALTH　　　　:
CARE SERVICES　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　Defendants.　　　　　　　:
----------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

Plaintiff, Gloria Moultrie, filed this suit alleging several claims of discrimination against her employer, VIP Health Care Services ("VIP"), a manager at VIP, Cindy Rosen, her employment union, Stationary Engineers Local 670 of the AFL-CIO ("Local 670"), and the president of Local 670, Dallas Lucas. Defendants VIP and Rosen, in lieu of filing an answer, moved to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, plaintiff's claims against VIP and Rosen are dismissed in their entirety.

**BACKGROUND**

In 1990, plaintiff, Gloria Moultrie, began working for defendant, VIP Health Care Services, as a home health-aide. (Compl. at 3.) Plaintiff alleges that, beginning sometime in 1995, her manager at VIP Health Care, Michael Pinnock, began a course of discrimination based on her race, national origin, physical disability and age.[1] (*Id.* at 3-4.) Due to some or all of these

---

[1] In her pleadings, plaintiff does not specify her age or her specific disability. Plaintiff does claim, however, that, on several occasions between October 2002 and August 2004, she received several Certificates of Disability that limited her ability to walk and carry heavy objects. (Compl. at 4.)

issues, plaintiff filed a complaint with the New York State Human Rights Division.[2]  (*Id.* at 3.) The Human Rights Division dismissed this complaint.  (*Id.*)

In August 2005, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") for disability discrimination and retaliation in violation of the American with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq.*  (Pl.'s EEOC Filing.)  In describing the particulars of the discrimination, however, plaintiff only claimed that she was harassed because of her physical disabilities.  *Id.*  Plaintiff did not allege or describe any discrimination based of her age, national origin or race.  On December 14, 2007, the EEOC issued a Notice of Right to Sue.  Subsequently, plaintiff timely filed this complaint on February 1, 2008.  (Compl. at 1.)

With respect to all defendants, plaintiff brings three claims: (1) race and national origin discrimination in violation of 42 U.S.C. § 2000(e) ("Title VII"); (2) age discrimination in violation of 29 U.S.C. § 621 ("AEDA"); (3) disability discrimination in violation of 42 U.S.C. § 12111 ("ADA"); and (4) intentional infliction of emotional distress under New York state law.  (Compl. at 5.)  With respect to Rosen and Lucas individually, plaintiff claims race discrimination in violation of 42 U.S.C. § 1981.  (*Id.* at 6.)  Finally, with respect to Local 670 and Lucas, plaintiff claims age, disability, race and national origin discrimination based on a failure to represent plaintiff fairly in her dispute with VIP.  (*Id.*)

In support of her complaint, plaintiff alleges that she was: (1) removed from her position as an aid to a specific VIP client and replaced by someone who had the same national origin as her manager, Pinnock; (2) paid a reduced salary for work performed on weekends; and (3) required to wash floors and clean laundry.  (*Id.* at 3-4.)

---

[2] Plaintiff has not provided the exact date that she filed a complaint with the State Human Rights Division.  From the sequence of events in her pleadings, however, it appears that plaintiff filed sometime in 1995.

Local 670 and Lucas filed their answer on March 7, 2008. Rather than answer, VIP and Rosen moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) for failure to state a claim upon which relief may be granted, arguing that, with respect to all or some of plaintiff's claims: (1) there is no individual liability; (2) plaintiff has failed to exhaust her administrative remedies; and (3) plaintiff has missed the applicable statute of limitations.

**DISCUSSION**

**I. Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure states that a defendant may move, in lieu of an answer, for dismissal of a complaint for "failure to state a claim upon which relief can be granted." On a motion to dismiss, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Dangler v. New York City Off-Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999). In *Bell Atlantic Corp. v. Twombly*, the Supreme Court modified the standard set forth half a century ago in *Conley v. Gibson*, that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," in favor of the requirement that plaintiff plead enough facts to "state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. 544, 561 (2007) (quoting *Conley*, 355 U.S. 41, 45-46 (1957)). To be facially plausible, a complaint cannot make merely "a formulaic recitation of the elements of a cause of action," but must allege facts that "raise a right of relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). The Second Circuit interpreted *Bell Atlantic* to "requir[e] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some

factual allegations in those contexts where such amplification is needed to render the claim plausible," rather than to mandate a "universal standard of heightened fact pleading." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

When material outside a complaint is "presented to and not excluded by the court, the motion must be treated as one for summary judgment . . . and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). For the purposes of this rule, the complaint is deemed to include writings and documents attached to it, referenced in it, or integral to it. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); Fed. R. Civ. P. 10(c). A document is "integral" to the complaint if "the complaint relies heavily upon its terms and effects." *Chambers*, 282 F.3d at 153 (internal citations and quotation marks omitted). "[A] plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* (emphasis in original).

Plaintiffs are harmed when material outside a complaint is considered on a motion to dismiss as they lack notice that such consideration is occurring. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). Rule 12(d)'s conversion requirement remedies this problem by "deter[ring] trial courts from engaging in factfinding [sic] when ruling on a motion to dismiss and ensur[ing] that when a trial judge considers evidence dehors the complaint, a plaintiff will have an opportunity to contest defendant's relied-upon evidence by submitting material that controverts it." *Id.* Accordingly, when there is actual notice by the opposing party of all the information in the movant's papers, the necessity to convert a motion to

dismiss to one for summary judgment "is largely dissipated." *Chambers*, 282 F.3d at 153 (internal citations and quotation marks omitted).

In this case, the court declines to convert defendants' motion to dismiss into a motion for summary judgment. Though defendants rely upon plaintiff's EEOC filing in support of their motion, the document is integral to plaintiff's complaint. Furthermore, as plaintiff completed and executed her EEOC filing, there is no potential harm due to a lack of notice.

**II. Application**

A. Plaintiff's Title VII Discrimination Claims

Plaintiff has made several Title VII claims of race and national origin discrimination against all of the named defendants. For the following reasons, plaintiff's Title VII claims against Rosen and VIP are dismissed in their entirety.

1. Plaintiff's Title VII Claim Against Rosen

It is well-settled that there is no individual liability under Title VII. *See, e.g.*, *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) ("[I]ndividuals are not subject to liability under Title VII."); *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000) (per curiam). Therefore, plaintiff's Title VII claim against Rosen is dismissed.

2. Exhaustion of Administrative Remedies

Turning to the remainder of plaintiff's Title VII claims, before filing a Title VII claim in federal court, a plaintiff must first exhaust all administrative remedies. *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82-83 (2d Cir. 2001) ("Exhaustion of remedies is a precondition to [a] suit" under Title VII and the ADEA.) (citing *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)). All claims must either have been "included in or . . . reasonably related to the allegations contained in" an EEOC filing. *Id.* at 83 (internal citations and quotation marks

omitted). "A claim raised for the first time is reasonably related to the allegations in an EEOC charge where the conduct complained of would fall within the scope of the EEOC investigation which can be reasonably expected to grow out of the charge of discrimination." *Id.* (internal citations and quotation marks omitted).

Here, plaintiff failed to exhaust her administrative remedies with respect to her Title VII claims. While plaintiff did check the box labeled "Title VII" on the cover of her EEOC filing, she did not check the box indicating either "race" or "national origin" as either a circumstance or basis for the alleged discrimination. *See White v. N.Y. City Dep't of Educ.*, No. 05-CV-2064, 2008 WL 4507614, at *3 (E.D.N.Y. Sept. 30, 2008) (holding that checking "other" as the basis for discrimination on an EEOC filing, when there is a specific box for "sex," does not support a later claim of sex discrimination). Even if the court overlooked the fact that plaintiff failed to mark either the race, color or national origin boxes in the "Discrimination" basis section of her EEOC filing, plaintiff only alleged disability discrimination in the "Particulars" section of her EEOC filing. Thus, there is no information in plaintiff's EEOC filing indicating that she was subjected to race or national origin discrimination. Plaintiff, therefore, has not exhausted her administrative remedies with respect to her Title VII claims, because these claims were not included in nor reasonably related to the allegations in her EEOC filing.

3. Prima Facie Title VII Claims

Title VII prohibits employers from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). To establish a prima facie claim for discrimination, a plaintiff must demonstrate: "(1) membership in a protected class; (2)

qualifications for the position; (3) an adverse employment action; and (4) circumstances surrounding that action giving rise to an inference of discrimination." *See Collins v. N.Y. City Trans. Auth.*, 305 F.3d 113, 118 (2d Cir. 2002). At this stage, a plaintiff's burden of proof is de minimus. *Id.* The plaintiff, however, must demonstrate that "the circumstances . . . give rise to or support an inference of discrimination or retaliation." *Id.* In doing so, a plaintiff must make more than mere "conclusory allegations or legal conclusions masquerading as factual conclusions" of discrimination. *See* 2 James Wm. Moore et al., Moore's Federal Practice § 12.34[1][b] (3d ed.1997); *see also First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771-72 (2d Cir. 1994).

Here, plaintiff failed to make a prima facie claim of race or national origin discrimination. Plaintiff's complaint and reply brief to VIP's motion to dismiss are filled with conclusory claims of race or national origin discrimination. Reading plaintiff's complaint and reply brief in the most favorable light, the fact that on a single occasion plaintiff's supervisor, a Jamaican, replaced plaintiff as an aid to a specific VIP client with another Jamaican employee, is far from sufficient to support an inference of race or national origin discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) ("[P]laintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment.") (citation and internal quotation marks omitted).

Therefore, as plaintiff failed to exhaust administrative remedies and failed to allege sufficient facts to make out a prima facie claim of race or national origin discrimination, plaintiff's Title VII claim against VIP is dismissed.

B. ADEA Claims

Plaintiff has made several ADEA claims. For the following reasons, plaintiff's ADEA claims against VIP and Rosen are dismissed in their entirety.

1. Plaintiff's ADEA Claim Against Rosen

As with Title VII, there is no individual liability under the ADEA. *Fox v. State Univ. of N.Y.*, 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007) ("[T]here is no individual liability under Title I or Title II of the . . . ADEA.") (citing *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001)); *Peres v. Oceanside Union Free Sch. Dist.*, 426 F. Supp. 2d 15, 22 (E.D.N.Y. 2006) ("Plaintiff's ADEA claim . . . fails as a matter of law as the ADEA does not provide individual liability."). Therefore, plaintiff's ADEA claim against Rosen is dismissed.

2. Exhaustion of Administrative Remedies

As with Title VII claims, before bringing an ADEA claim, a plaintiff must first exhaust all administrative remedies. *Holtz*, 258 F.3d at 82-83 ("Exhaustion of remedies is a precondition to [a] suit" under both Title VII and the ADEA.) (citing *Francis*, 235 F.3d at 768). A plaintiff may only bring claims in federal court "that either were included in or are reasonably related to the allegations contained in" an EEOC filing. *Id.* at 83 (internal citations and quotation marks omitted). "A claim raised for the first time is reasonably related to the allegations in an EEOC charge where the conduct complained of would fall within the scope of the EEOC investigation which can be reasonably expected to grow out of the charge of discrimination." *Id.* (internal citations and quotation marks omitted).

Here, plaintiff filed a complaint with the EEOC on August 18, 2005. Much like her Title VII claims, plaintiff did not indicate in her EEOC filing that she was bringing a claim under the ADEA, nor did plaintiff allege age discrimination in her EEOC filing. To overcome these

deficiencies, plaintiff attempts to rely on the case of *Owens v. N.Y. City Hous. Auth.*, 934 F.2d 405 (2d Cir. 1991).

In *Owens*, the Second Circuit held that a claim of retaliation based on the filing of an EEOC claim is reasonably related to the filing itself, and therefore, did not require a separate EEOC filing. *Id.* at 410-11. Here, the alleged age discrimination against plaintiff allegedly occurred *prior* to plaintiff's EEOC filing. Unlike in *Owens*, the alleged age discrimination against plaintiff was not subsequent to her EEOC filing, and thus, could not have been in retaliation for her EEOC filing. Plaintiff's reliance on *Owens* is, therefore, misplaced.

3. Prima Facie ADEA Claims

In addition to plaintiff's failure to exhaust administrative remedies, plaintiff's pleadings do not make out a prima facie claim of discrimination under the ADEA. A prima facie claim of discrimination under the ADEA requires that the plaintiff describe circumstances that "give rise to an inference of age discrimination." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466-67 (2d Cir. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The plaintiff must make more than mere conclusory allegations of age discrimination. *Lee v. Healthfirst, Inc.*, No. 04-CV-8787, 2007 WL 634445, at *8 (S.D.N.Y. Mar. 1, 2007) (internal citations omitted).

Here, plaintiff's EEOC filing, pleadings, and reply brief do not describe any acts related to her age or any acts from which age discrimination may be inferred. In fact, plaintiff did not even mention her age, the age of any of her co-workers, or the age of any of her supervisors in either her complaint or reply brief. Thus, any claim by plaintiff of age discrimination fits the definition of a conclusory allegation.

As plaintiff has failed to exhaust all of her administrative remedies and has failed to make a prima facie claim of age discrimination, her ADEA claim against VIP is also dismissed.

C. ADA Claims

Plaintiff's complaint also alleges several ADA violations. For the following reasons, plaintiff's ADA claims against VIP and Rosen are dismissed in their entirety.

  1. Plaintiff's ADA Claim Against Rosen

As is the case with both Title VII and the ADEA, the ADA does not provide individual liability. *Fox*, 497 F. Supp. 2d at 449 ("[T]here is no individual liability under Title I or Title II of the ADA, or the ADEA.") (citing *Garcia*, 280 F.3d at 107). Therefore, plaintiff's ADA claim against Rosen is dismissed.

  2. Plaintiff's ADA Claim Against VIP

Before bringing claims under the ADA, a plaintiff must first file a charge with the EEOC within three hundred (300) days of the allegedly discriminatory act. 42 U.S.C. § 12117(a) incorporating 42 U.S.C. § 2000e-5. *See also Kendall v. Fisse*, No. 00-CV-5154, 2004 WL 1196811, at *3 (E.D.N.Y. May 25, 2004). "The statute of limitations begins to run when the employee receives notice of an allegedly discriminatory decision—not when the employee is actually impacted by it." *Id*.

Here, plaintiff filed a charge with the EEOC on August 18, 2005. Thus, any discriminatory acts must have occurred on or after October 10, 2004 to meet the three-hundred-day window for filing a claim with the EEOC. While plaintiff's complaint mentions several instances between 2003 and 2004 when her physician provided her with a Certificate of Disability, the complaint is completely devoid of any allegation of disability discrimination. The last date mentioned in plaintiff's complaint, August 16, 2004, does not concern an instance of

discrimination, but rather, highlights a date upon which plaintiff received another Certificate of Disability. The closest the complaint comes to mentioning disability discrimination concerns the allegation that, sometime in 2000, her employer required plaintiff to wash floors and clean laundry twice a week. This instance, however, occurred approximately five years before plaintiff's August 18, 2005 EEOC filing and, thus, is well outside the three-hundred-day statute of limitations period.

Plaintiff, therefore, has failed to comply with the ADA's statute of limitations. Thus, plaintiff's ADA claim against VIP is dismissed.

D. Section 1981 Claims

Against Rosen, plaintiff also alleges race, age and national origin discrimination pursuant to 42 U.S.C. § 1981. For the following reasons, these claims against Rosen are dismissed in their entirety.

Section 1981 claims have a four-year statute of limitations. 28 U.S.C. § 1658; *see also Bacon v. Suffolk Legislature*, 05-CV-4307, 2007 WL 2288044, at *6 (E.D.N.Y. Aug. 8, 2007) (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382-83 (2004)). Here, plaintiff filed the complaint on February 1, 2008. Therefore, to comply with the statute of limitations, plaintiff must have alleged that the discriminatory conduct occurred on or after February 1, 2004. Beyond vague allegations of race and national origin discrimination occurring sometime between 1995 and 2000, however, the complaint is completely silent as to any acts of age, race or national origin discrimination occurring on or after February 1, 2004. The only events mentioned in the complaint that occurred on or after February 1, 2004 concern two instances when a physician provided plaintiff with a Certificate of Disability. Neither of these events concern discriminatory acts or relate to plaintiff's age, race or national origin.

As plaintiff has failed to allege sufficient facts regarding acts of age, race or national origin discrimination that occurred within the applicable statute of limitations period, plaintiff's Section 1981 claims against Rosen are dismissed.

E. <u>Intentional Infliction of Emotional Distress Claims</u>

1. Statute of Limitations

New York law provides a one-year statute of limitations for claims of intentional infliction of emotional distress. N.Y.C.P.L.R. § 215(3); *see also Mariani v. Consolidated Edison Co.*, 982 F. Supp. 267, 273 (S.D.N.Y. 1997) ("It is well established that the one-year statute of limitations set forth in CPLR § 215(3) for intentional torts is applicable to claims for intentional infliction of emotional distress."). Here, plaintiff filed her complaint on February 1, 2008. However, plaintiff has not alleged any acts that occurred on or after February 1, 2007. Therefore, plaintiff's claims of intentional infliction of emotional distress against VIP and Rosen fail to meet the applicable statute of limitations.

2. Continuing Wrong Theory

Plaintiff agrees that the one-year statute of limitations is applicable to this claim but asks that the court toll the statute under the continuing wrong theory. Under a continuing wrong theory, a court may toll the statute of limitations when the plaintiff "allege[s] a continuing pattern and practice of actionable behavior . . . ." *See Neufeld v. Neufeld*, 910 F. Supp. 977, 983 (S.D.N.Y. 1996). However, "New York courts have been reluctant to apply a continuing wrong theory to include acts that took place outside of the statute of limitations in intentional infliction of emotional distress claims." *Mariani*, 982 F. Supp. at 273-74 (internal quotation marks omitted). Moreover, before a court even considers applying the continuing wrong theory the plaintiff must allege "acts within the statute of limitations . . . sufficient to make out a claim for

intentional infliction of emotional distress, independent of those acts that are part of the offending course of conduct" that occurred outside the statute of limitations. *Id.* (internal citations and quotation marks omitted). In other words, for the continuing wrong theory to apply at all, a plaintiff must establish a prima facie claim of intentional infliction of emotional distress that occurred within the statute of limitations period.

Here, the latest acts mentioned in plaintiff's complaint occurred sometime in 2004, none of which relate to her intentional infliction of emotional distress claims. The continuing wrong theory is, therefore, not applicable because plaintiff has not alleged any acts that occurred within the one-year statute of limitations period. Moreover, as discussed above, plaintiff fails to allege any facts that support claims of age, race, or national origin discrimination.

Therefore, in addition to being barred by the applicable statute of limitations, there is no factual basis for plaintiff's claims of intentional infliction of emotional distress. Thus, plaintiff's claims of intentional infliction of emotional distress against VIP and Rosen are dismissed.

**CONCLUSION**

Based on the foregoing, plaintiff's claims against defendants VIP and Rosen are dismissed in their entirety.

SO ORDERED.

DATED:    Brooklyn, New York
          March 19, 2009

_____/s/_____
DORA L. IRIZARRY
United States District Judge